HORTON, *Administratrix*, v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY *et al.*, *Appellants.*

**Mechanic's Lien**: STATUTE. Under Revised Statutes, section 3172, a mechanic is entitled to his lien for work upon a building by virtue of a contract with the owner or proprietor of the property, or his agent, trustee, contractor, or sub-contractor, and a lien proceeding and judgment thereunder is not binding on one not a party thereto, where it appears that the work for which the judgment was obtained was not done under a contract with the proper persons as required by the statute.

*Appeal from Clinton Circuit Court.*—HON. G. W. DUNN, Judge.

REVERSED.

*C. T. Garner & Son* and *W. H. Blodgett* for appellants.

(1) The depot buildings were erected by the St. Louis & St. Joseph Railroad Company on the land of said company as part of its line of railroad, and were completed by said company with its road, were intended to be and are as permanent a fixture to the land as the road-bed and rails on its track, and hence, cannot be and are not personal property, and this action cannot be sustained. It is not shown, nor does it appear that these depot buildings were erected upon any agreement or arrangement that they were to be removed from the land under any circumstances or any contingency whatever, nor is it shown that in their erection they were considered or regarded as personal property. Washburn on Real Property (4 Ed.) 3 ; *Rogers et al. v. Crow et al.*, 40 Mo. 93 ; *The State Savings Bank v. Kercheval*, 65 Mo. 682. (2) The description of the property sought to

be covered by the lien is insufficient, and no lien created, no title passed thereunder. *Williams v. Porter*, 51 Mo. 441; *Matlock v. Lane*, 32 Mo. 263. Under our statute the building cannot be separated from the land in enforcing mechanic's lien. There can be no lien under which a title can be obtained in a proceeding to enforce a mechanic's lien independent of and separate from the land on which the buildings are situate. The North Missouri Railroad Company was not the contractor for the plastering of the depots, and the deceased, Horton, made a fatal mistake in instituting the lien proceedings against that road. *Williams v. Porter*, 51 Mo. 441; *Lemley v. LaGrange, etc.*, 32 Mo. 262; *Ranson v. Sheehan*, 78 Mo. 668; *Wright v. Beardsley*, 69 Mo. 548; *Fitzpatrick v. Thomas*, 61 Mo. 512. The court erred in giving instructions for respondent. Said instructions did not present the law of the case and were not supported by the evidence. *Belcher v. Shamburg*, 18 Mo. 189; *Houser v. Hoffman*, 32 Mo. 134; *Siebel v. Tiernion*, 72 Mo. 527; *Waters v. Stevenson*, 13 Nev. 157; Sedgwick on Measure of Damages, 472, 488; *Spencer v. Vance*, 57 Mo. 430. If the proceedings to enforce a mechanic's lien appear on their face to be fatally defective in the description of the property to be charged with the lien, no one is bound to take any notice of such proceedings. *Goepp v. Gartaser*, 35 Pa. St. 130; Phillips on Liens, sec. 378. The contractor or mechanic cannot claim any greater estate or title in the premises than the person possesses under whom he claims. *Bridwell v. Clark*, 39 Mo. 170. The action of trover will not lie for the conversion of real property, or that which in law formed a part of the realty. *Gibbs v. Esty*, 15 Gray 587; *London v. Platt*, 31 Conn. 517; *Wooden v. Pease*, 17 N. H. 282. The depot buildings and land on which they were situated is a part of the railroad and were sold. It is against the general purposes of our statute, as well as the construction given therein by this court, to allow a railroad to be sold in detached parcels, under the mechanic's lien

act, or otherwise. *Schulenburg v. Memphis & North-western R. R. Co.*, 67 Mo. 442.

*J. W. Shotwell* and *E. F. & R. E. Esteb* for respondent.

(1) It is not seriously controverted on the part of appellants that in the months of September, October, and November, 1870, the depot buildings in controversy were plastered by the deceased, Horton, or that he enforced his mechanic's lien on the several buildings in controversy against the North Missouri Railroad Company, recovered judgments, had executions issued enforcing the lien upon the several depots, had them sold, became the purchaser, took the sheriff's deeds and had them duly recorded, all before the sale of the road under the deed of trust to the Farmers Loan and Trust Company of New York, to St. Anger Chase, through whom defendants claim ; the evidence further discloses the fact that Horton died on the fourth day of April, 1873, leaving a wife and infant child to contend for their rights against rich and powerful corporations. The facts in evidence show that the North Missouri Railroad Company was in possession of and operating the St. Louis and St. Joseph Railroad under a written agreement for a lease, at the time that the deceased, Horton, plastered the buildings now in controversy. (2) Under this state of case, the court committed no error in giving the first instruction asked for by the plaintiff. 1 Revised Statutes, Mo., 188, sec. 1018 ; *Raithel v. Dezetter*, 43 Mo. 145 ; *Reid v. Mullins*, 43 Mo. 306 ; *Lee v. Casey*, 39 Mo. 383 ; *Battel v. Crawford*, 59 Mo. 215. (3) The same is true of the second and third intructions on the part of plaintiff. 1 Revised Statutes, 535, sec. 3180 ; *Schaeffer v. Lohman et al.*, 34 Mo. 68 ; *Hauser v. Hoffman*, 32 Mo. 334 ; *Miller et al. v. Faulk et al.*, 47 Mo. 262 ; *Webbing v. Powers*, 25 Mo. 599 ; *Ashburn v. Ayres*, 28 Mo. 75 ; *Lowenberg v. Bernd*, 47 Mo. 297 ;

*Walkenhorst v. Caste et al.*, 33 Mo. 401. Other persons claiming an interest in the property upon which the lien is enforced have the right only to enquire into the regularity of the proceedings enforcing the lien. (4) The same is true of plaintiff's fourth instruction. *Kansas City Hotel Co. v. Sauer*, 65 Mo. 279 ; *Siebel v. Siemon*, 52 Mo. 363 ; *Matson v. Calhoun*, 44 Mo. 368. The fifth instruction of plaintiff is the law. *Hearne et al. v. Chillicothe and Brunswick R. R. Co. et al.*, 53 Mo. 324. (5) The sixth and seventh instructions of plaintiff correctly state the law. R. S., secs. 3174, 3178 ; *Kansas City Hotel Co. v. Sauer*, 65 Mo. 279 ; *Sieble v. Siemon*, 52 Mo. 363. (6) The court did not err in giving the eighth instruction for plaintiff. *Battel v. Crawford*, 59 Mo. 215. *Raithel v. Dezetter* and *Reid v. Mullens*, 43 Mo. 145 and 306 ; *Sparks v. Purdy*, 11 Mo. 219 ; *Sieble v. Siemon*, 52 Mo. 363 ; *Smith v. Phelps*, 62 Mo. 585 ; *Kansas City Hotel Co. v. Sauer*, 65 Mo. 279. (7) Plaintiff's ninth instruction is right, a suit in ejectment is not a bar to another action. *Holmes v. City of Carondelet*, 38 Mo. 551 ; *Carter v. Scaggs et al.*, 38 Mo. 302 ; *Graham v. City of Carondelet*, 33 Mo. 262 ; *Slevins, Trustee, v. Brown*, 32 Mo. 176. (8) The court committed no error in giving plaintiff's tenth instruction. *Riggins v. Missouri River, Ft. Scott & Gulf R. R. Co.*, 73 Mo. 598 ; *Paige v. Fullerton Woollen Co.*, 27 Vt. 485 ; *Miller v. McMains*, 57 Ill. 126. (9) The court properly refused defendant's first instruction. If there is the slightest evidence, however remote, tending to establish plaintiff's claim, a demurrer to the evidence cannot be sustained. *Routzong v. R. R.*, 45 Mo. 236 ; *Rippy v. Friede*, 26 Mo. 523 ; *Deer v. Plaint*, 42 Mo. 45. The other instructions given for plaintiff were properly given, and those given for the defendant were as favorable as the law warrants.

NORTON, J.—This suit was instituted by plaintiff in the circuit court of Clinton county, to recover damages for the wrongful conversion by defendants of certain

depot buildings, situate on the St. Louis and St. Joseph Railroad, in Clinton and Buchanan counties. The petition alleges in substance, that the depot buildings were personal property and were owned by plaintiff's intestate, and that she is entitled to the possession thereof, and that defendants wrongfully converted the same to their own use. Issue was joined on the petition, and on the trial plaintiff obtained judgment, from which the defendants have appealed, and among other things assign for error, the action of the circuit court in admitting improper evidence, and in giving improper and refusing proper instructions.

It is insisted by defendants that the court erred in refusing to instruct the jury, that on the evidence and pleading, plaintiff was not entitled to recover. The evidence showed that in September, October, and November, 1870, E. C. Horton, plaintiff's intestate, plastered five depots on the line of the St. Louis and St. Joseph Railroad, and furnished materials with which the work was done; that within the time prescribed by law, he filed his lien and account against the North Missouri Railroad Company, with which company it is alleged he made the contract for doing the work; that he instituted proceedings in the circuit courts of Clinton and Buchanan counties, respectively, to enforce his lien against said buildings and the right of way on which they were situated; that judgments were obtained in 1871, to be levied on the respective depot buildings, and the right of way on which the same stands on the St. Louis and St. Joseph railroad. Executions issued on these judgments, and the depot buildings, and the right of way on which they stood, were sold by the sheriff on the twenty-seventh day of January, 1872, and the said Horton became the purchaser, and received a deed therefor. Horton died in April, 1873, and on the seventh of February, 1877, plaintiff was appointed administratrix of his estate and thereafter instituted this suit against the present defendants, alleging that the depots in question were

personal property, and that they were wrongfully converted by defendants to their own use, to her damage, etc.

The deposition of White, offered in evidence and admitted over the objections of defendants, simply showed that in December, 1870, the St. Louis and St. Joseph railroad went into bankruptcy and that Mr. Knappner was the assignee, and in March, 1871, he handled several proofs of claims against the bankrupt company, among which was at least one presented by the North Missouri Railroad Company, which he remembered was for open accounts, for money paid on pay rolls, due by the bankrupt company, and for money alleged to have been spent by the North Missouri Railroad Company, in the latter part of 1870. His impression was the account commenced about the first of September, 1870, that he knew nothing of his own knowledge of the running of the St. Louis and St. Joseph railroad by the North Missouri Railroad Company. Plaintiff also read in evidence what purported to be a copy of an agreement entered into between L. H. Lawson, president of the St. Louis and St. Joseph Railroad Company, and Barton Bates, president of the North Missouri Railroad Company, dated June 15, 1870. This was a mere memorandum of an agreement to the effect that the St. Louis and St. Joseph Railroad Company, would, when its road was completed, lease the same to the North Missouri Railroad Company, and the plain inference to be drawn from it, is, that the St. Louis and St. Joseph Railroad Company was to furnish and complete its road.

Defendant offered evidence showing that the St. Louis and St. Joseph Railroad Company was duly incorporated on the thirty-first day of December, 1867, and that on the second day of November, 1868, the said company executed a deed of trust, which was duly recorded in Clinton and Buchanan counties, to the Farmers Loan and Trust Company, of New York, on its entire line of railroad, track, rights of way, depot buildings, station

houses, etc., to secure the payment of certain bonds mentioned therein, with power of sale in default of payment; that thereafter, default having been made in payment of the bonds, the said Trust Company, under the power given, sold and conveyed, on the fourteenth of March, 1874, the entire line of railroad track, franchises, rights of way, and depot buildings to S. Anger Chase, who, thereafter, on the twentieth of March, 1874, sold the same to the St. Joseph and St. Louis Railroad Company, a corporation duly organized under the laws of the state; that the St. Joseph and St. Louis Railroad Company, on the first day of June, 1874, leased the entire line of its road with its road bed, track, rights of way, depot buildings, etc., to one of the defendants, the St. Louis, Kansas City and Northern Railroad Company, thereafter consolidated with the Wabash, St. Louis & Pacific Railroad Company, and that by said consolidation the latter company became possessed of all the property, assets, franchises, and rights of the St. Louis, Kansas City and Northern Railroad Company and subject to its liabilities. The defendant, also, introduced evidence showing that the depot buildngs are situate on the right of way, and are necessary and indispensable in carrying on and conducting the business of said company; the foundations thereof are blocks put in the ground, the building resting thereon. It was also shown by witness, Golden, who had been in the employ of the St. Louis and St. Joseph Railroad Company till it went into bankruptcy in December, 1870, that all the depots were built during the time he was thus employed, including the plastering, and before the road went into bankruptcy, and that Horton, while plastering the depots, said he was working for the same company he was. Witness, Chew, testified that he was stockholder in the St. Louis and St. Joseph Railroad Company, was director and secretary of the board of directors, and chairman of the executive committee; that the North Missouri Railroad Company was never the owner of the railroad from St.

Joseph to North Lexington, and never built or constructed any part of the road or depots, and never had a lease on the road ; that the depots were built before the road went into bankruptcy, and were built by the St. Louis and St. Joseph Railroad Company, and that the North Missouri Railroad Company never ran the said road prior to its going into bankruptcy ; that some of its rolling stock was used on the road prior thereto,

The evidence of Golden and Patock, and that of witness, How, who was secretary of the North Missouri Railroad Company in the years 1869 and 1870, and until it went into bankruptcy, and also that of James H. Bisch, who, for a short time was president of the St. Louis and St. Joseph Railroad Company, and director from the organization of the company until it went into bankruptcy, is to the effect that the St. Louis and St. Joseph Railroad Company built the depot buildings, and that the road was neither owned by the North Missouri Railroad Company, nor did it build the depots or any other part of the road. Defendant, also, read in evidence the proceedings of a suit in ejectment by Elmer Horton, guardian of John E. Horton, to recover said depot buildings against the St. Louis, Kansas City and Northern Railroad Company, and the finding and judgment of the court for defendant.

It is provided by section 3172, Revised Statutes, which was the law in force at the time the depots in question were built, that before a mechanic or person who shall do or perform any labor upon any building upon land can assert a lien, he must show that it was done under a contract, either with the owner or proprietor thereof, or his agent, trustee, contractor, or subcontractor. There is no evidence in this case that at the time the depots were erected, the North Missouri Railroad Company, which was the only party made to the lien proceeding instituted by Horton, was either the owner

of the right of way on which the buildings were erected, nor that said company was either the agent, trustee, contractor, or sub-contractor of the owner, nor is there any evidence that the plastering of the depots was done under a contract with the North Missouri Railroad Company. The utmost that can be said of the evidence offered by plaintiff, is, that it tended to show an agreement on the part of the St. Louis and St. Joseph road to lease the road, when completed, to the North Missouri Railroad Company, and that the St. Louis and St. Joseph Railroad Company was to complete its road. There is no evidence that this arrangement was ever carried out by a lease of the road, but positive evidence that it was not.

Judgment reversed, in which all concur.